City of Philadelphia, Appellant *v.* Rami Cohen and Rami Electronics and Stereo Sound, Inc., Appellees.

Argued June 4, 1984, before Judges WILLIAMS, JR., DOYLE and PALLADINO, sitting as a panel of three.

*Flora Wolf,* with her, *Martha Gale,* Assistant City Solicitor, *Tyler E. Wren,* Divisional Deputy City Solicitor, and *Mark A. Aronchick,* City Solicitor, for appellant.

*Joseph R. Pozzuolo,* with him, *Jane Rossowski, Joseph R. Pozzuolo Associates, P.C.,* for appellees.

*Jerome Balter,* for Amici Curiae, Delaware Valley Citizens' Council for Clean Air and Public Interest Law Center of Philadelphia.

OPINION BY JUDGE WILLIAMS, JR., July 25, 1984:

The City of Philadelphia appeals the decision of the Common Pleas Court of Philadelphia County, which found specific provisions of the city's Noise and Excessive Vibration ordinance[1] and regulations facially unconstitutional for vagueness and overbreadth.

---

[1] The city's anti-noise ordinance is at Chapter 10-400 of the Philadelphia Code of Ordinances (Code), Sections 10-401 through 10-408 of the Code.

The defendants, who own and operate a retail, stereo electronics shop in the city, were cited on five separate occasions in 1982 for emitting recorded, amplified music from their store at decibel levels violative of Section III(D)(1) of the city's Noise and Excessive Vibration regulations. Section III(D)(1) prohibits commercial and industrial establishments from amplifying sounds by more than three decibels "above background level beyond property boundary."

On September 16, 1982 the city filed a complaint in equity seeking to restrain defendants from playing amplified, recorded music in violation of the anti-noise ordinance and regulations. Challenging the constitutionality of sundry anti-noice ordinance provisions and Section III(D)(1) for vagueness and overbreadth, the defendant submitted preliminary objections, which the common pleas court sustained. The city appeals from the court's order dismissing its complaint with prejudice.

## Overbreadth

Upon acknowledging that the amplification of sound is an activity protected by the First Amendment but subject to reasonable time, place and manner restrictions, *Jim Crockett Promotion, Inc. v. City of Charlotte*, 706 F.2d 486 (4th Cir. 1983), the common pleas court held Section III(D)(1) void for overbreadth.

Section III(D)(1) provides that:

[a]mplified sounds from commercial and industrial establishments shall not exceed 3dBA (decibels) above background level beyond the property boundary.

The common pleas court invalidated Section III(D)(1) for overbreadth because amplified sound more than three decibels above background level could be of low volume and therefore nondisruptive, depending

upon baseline sound measurements. The "three decibels above background" standard permits the amplification of sound to a volume one and one-half times the measured sound level in the area without the additional sound. Amicus brief of Delaware Valley Citizens' Council For Clean Air at 10, 11.

The overbreadth doctrine allows litigants, who have clearly engaged in unprotected expression, to challenge purportedly overbroad regulations that chill protected expression. *Broadrick v. Oklahoma,* 413 U.S. 601 (1973). The vicarious assertion of First Amendment rights is predicated on the possibility that unconstitutional restriction of expression may deter protected speech by individuals not before the court, and thereby evade judicial review. *Id.* Because overbreadth adjudication disregards the personal nature of constitutional rights, *substantial* overbreadth is necessary for a regulation's facial invalidation. *New York v. Ferber,* 458 U.S. 747, 769 (1982). Additionally, a regulation's invalidation threshold for overbreadth increases when the activity regulated moves from speech to conduct having an incidental impact on First Amendment rights. *Broadrick,* 413 U.S. at 615.

Citing *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489 (1982), the city argues that the common pleas court erred in declaring Section III(D)(1) void for overbreadth because the overbreadth doctrine does not apply to commercial speech. Commercial speech is "expression related solely to the economic interests of the speaker and its audience," *Central Hudson Gas Co. v. Public Service Commission of New York,* 447 U.S. 557, 561 (1980); and, when an expressive activity is intimately related to economic self-interest, an overbroad regulation's chilling effect is deemed significantly mitigated. *Id.* Since the Section III(D)(1) restricts the sound vol-

ume emanating from "commercial and industrial establishments," places where business and economic concerns predominate, commercial speech is involved and the overbreadth doctrine is therefore inapplicable.

Defendants assert, however, that the commercial speech argument was neither presented to, nor considered by, the common pleas court. Since a new and different argument or theory of relief may not be advanced initially on appeal, *Kemp v. Qualls,* Pa. Superior Ct. , 473 A.2d 1369 (1984), the overbreadth doctrine will be employed notwithstanding the commercial speech exclusion.

Application of the overbreadth doctrine permits parties—whose conduct is clearly unprotected and may be constitutionally proscribed—to challenge regulations that conceivably inhibit the First Amendment rights of others. *Broadrick,* 413 U.S. at 612. Because Section III(D)(1) regulates the volume, and not the content, of the amplified sound, defendants must establish that the regulation infringes upon a *substantial* amount of protected expressive activity. *Id.* A regulation, therefore, should not be invalidated for facial overbreadth "unless it reaches a substantial number of impermissible applications." *Ferber,* 458 U.S. at 771.

Section III(D)(1) is not substantially overbroad because it could be—depending upon the particular background decibel level—impermissibly applied (in some instances) to prohibit "non-disruptive" amplified sound of low volume. Given the broad, legitimate sweep of the anti-noise ordinance and the limited reach of the regulation, which regulates, in a neutral and noncensorial manner, the amplified sound *volume* (not content) emanating from commercial and industrial establishments, the regulation is not substantially overbroad. *See Ferber* (state child pornography statute not substantially overbroad in possibly pro-

scribing serious literature because statute's "legitimate reach dwarfs its arguably impermissible applications"). Whatever overbreadth that exists should be corrected through case-by-case analyses of specific factual situations, and not by generally invalidating the regulation for facial overbreadth. *Id.*, 458 U.S. at 773-74; *Broadrick*, 413 U.S. at 615-16.

### *Vagueness*

The common pleas court also found Section III(D) (1) and designated language in Section 10-402(4)(a) of the Code to be impermissibly vague under the due process clause of the Fourteenth Amendment. To violate vagueness requirements for adequacy of notice of prohibited conduct and enforcement standards, an enactment's terms must be so indefinite that "men of common intelligence must necessarily guess at its meaning and differ as to its application." *Reeves v. McConn*, 631 F.2d 377, 383 (5th Cir. 1980) (quoting *Connally v. General Construction Co.*, 269 U.S. 385, 391 (1926)). The criteria employed in evaluating regulatory language for vagueness, embrace "flexibility and reasonable breadth" rather than "meticulous specificity" or "mathematical certainty." *Grayned*, 408 U.S. at 110.

In delineating conduct prohibited by the anti-noise ordinance, Section 10-402(4)(a) of the Code defines "noise" as "the presence of a sound or sounds of such intensity, duration, frequency or character which annoy, disturb, or cause or to tend to cause *adverse psychological and physiological effects* on persons." (Emphasis supplied.) While upholding the balance of the "noise" definition, the common pleas court found the phrase "adverse psycholocial and physiological effects" to be unconstitutionally vague.

Other courts, however, have denied vagueness challenges to substantially similar language. *See*

*Grayned* ("disturbs or tends to disturb the peace or good order"); *Jim Crockett Promotion, Inc.* ("unreasonably loud, disturbing . . . noise"); *Reeves* ("unreasonably loud, raucous, jarring, disturbing, or a nuisance to persons within the area of audibility"). Although the phrase "adverse psychological and physiological effects" lacks quantitative precision, this language embodies a normative standard sufficient to guide prospective conduct and is not, therefore, unconstitutionally vague.

The common pleas court further determined that designated language of Section III(D)(1) was impermissibly vague. As indicated previously, Section III(D)(1) provides that:

> [a]mplified sounds from commercial and industrial establishments shall not exceed 3dBA (decibels) above *background level* beyond the *property boundary*. (Emphasis supplied.)

We hold that the terms invalidated by the common pleas court for vagueness (*i.e.,* "decibel," "background level" and "beyond the property boundary") are not unconstitutionally vague. Further, when, as here, business enterprises are regulated, vagueness standards are relaxed. *Village of Hoffman Estate,* 455 U.S. at 498.

Employment of a decibel scale to measure objectively amplified sound levels is not a denial of fair warning of prohibited conduct. Substitution of precise decibel measurement by sound intensity meters for general, descriptive definitions of "noise" reduces the likelihood of arbitrary enforcement and renders a regulation less, not more, vulnerable to challenge on vagueness grounds.

The regulations define "background level" as "the measured sound level in the area without the sound contribution of the specific source in question." Section I(B)(1). The common pleas court reasoned

that since "background level" is an unstable measurement subject to constant fluctuations, constitutionally protected expressive activity may be deterred by the continual necessity to ascertain background level measures in order to ensure compliance with the regulation. Since protected activity is purportedly being chilled, the court is actually making an overbreadth, and not a vagueness argument. We have held, however, that Section III(D)(1) is not substantially overbroad. Nor is "background level" unconstitutionally vague under the standards articulated in *Grayned* and *Reeves*.

Finally, the phrase "beyond the property boundary" is not invalid for indefiniteness because it fails to specify the distance from the property boundary from which sound measurements are made. "Property boundary" is defined as "[t]he surveyed line at ground surface which separates the facility owned, rented or leased by one or more persons from any other such facilities." Section I(B)(8). The "property boundary" definition insures fair enforcement by clearly designating the sound level measurement zone as that area beyond the property boundary. Section III(D)(1) provides fair notice to commercial and industrial establishments that increasing amplified sound levels by more than three decibels beyond their property line is prohibited. The phrase "beyond the property boundary" is, therefore, not unconstitutionally vague.

Accordingly, we reverse the order of the common pleas court.

### Order

And Now, this 25th day of July 1984, the order of the Court of Common Pleas of Philadelphia County, dated April 4, 1983, is reversed.